UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ADHYL POLANCO,

        Plaintiff,

  -v-                                     No. 16-CV-09196-LTS

THE CITY OF NEW YORK and THE NEW
YORK CITY POLICE DEPARTMENT,

        Defendants.
-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

Plaintiff Adhyl Polanco ("Plaintiff" or "Polanco") brings this civil rights action against Defendants The City of New York (the "City") and The New York City Police Department (the "NYPD," and together, the "Defendants"), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), New York State Executive Law § 296 (the "NYSHRL"), New York City Administrative Code § 8-107 (the "NYCHRL"), 42 U.S.C. § 1983, and New York State Constitution Article I, § 8. In an eight-count Complaint, Plaintiff, a Latin-American NYPD police officer and employee of the City, alleges that Defendants subjected him to unlawful discrimination, a hostile work environment, and retaliation for speaking about the NYPD's allegedly illegal quota system, which he believes targets minority communities, in violation of various anti-discrimination laws and the First Amendment.

The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

This case was originally filed in the United States District Court for the Eastern District of New York, on September 1, 2015. It was transferred to this Court in 2016.

Defendants move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Complaint for failure to state a claim upon which relief can be granted. (Docket Entry No. 13.)

The Court has carefully reviewed all of the parties' submissions and, for the following reasons, the Defendants' motion is granted. Plaintiff will be afforded the opportunity to request leave to file an amended complaint.

BACKGROUND

The following facts are derived from the allegations of the Complaint ("Compl.", Docket Entry No. 1), and are assumed to be true for purposes of the instant motion practice.

Plaintiff is a Latin-American NYPD police officer who joined the NYPD on July 11, 2005. (Compl. ¶¶ 6-7, 12.) The City and NYPD are municipal agencies with offices and places of business in New York, New York. (Id. ¶¶ 9-10.)

Plaintiff alleges that, beginning in 2009, he made multiple statements to the press and other media "about the existence of quotas in the issuance of summons and arrest[] warrants in the NYPD" and the Department's practice of "targeting" African-American communities "in order to obtain the summons and arrest numbers required by the quota[,]" and also asserted in such statements that the supervisors of the 41st Precinct, to which he was assigned, "were aggressively using threats of termination and negative employment actions[,] such as low performance evaluations and punitive postings, to compel police officers to issue borderline and illegal summons and make borderline and illegal arrests in order to achieve a goal of a certain number of" summons and arrests per quarter. (Id. ¶¶ 12-13.) In November 2009, Plaintiff alleges, he reported "misconduct and corruption within the [precinct]" to the NYPD's Internal

Affairs Bureau ("IAB"), including similar complaints about the supervisors' actions to those he made to the media. (Id. ¶ 14.)

Plaintiff filed a follow-up report with the IAB the next month complaining of retaliation for his IAB complaint. (Id. ¶ 15.) He further alleges that, in retaliation "for his opposition to the [NYPD's] racially discriminatory quota practices," beginning in December 2009 and continuing for an unspecified period, he was "falsely and pretextually charged with insubordination" and was subjected to numerous punishments, including 30 days suspension without pay, 1500 days suspension with pay, over 400 days of punitive posting in VIPER, over 1500 days on restricted duty psychological hold without cause, no vacation for four years, no overtime for four years, no night differential pay for four years, no training for four years, and placement on level two performance monitoring for over four years. (Id. ¶ 16.) Plaintiff further alleges he was retaliated against for his opposition to the NYPD's quota practices on December 23, 2009, and in January 2010, when he was placed on modified assignment transfer out of command and placed on mental watch through 2015. (Id. ¶¶ 17-18.)

On March 1, 2010, Plaintiff was interviewed by a local news station about the NYPD's use of quotas in the 41st Precinct and in the NYPD at large and, on August 25, 2010, the Village Voice published a similar interview with Plaintiff. (Id. ¶¶ 19-20.) Plaintiff provided testimony in an April 2010 deposition, and again at trial on or about March 2013, in a class action lawsuit in this district "regarding the NYPD's stop[-]and[-]frisk practice and how it unfairly targets the minority community," in which he testified that the NYPD targets minorities "to attain high levels of enforcement activity numbers mandated by illegal quotas" and punishes officers "for not participating in" enforcing the quotas. (Id. ¶¶ 28, 30.)

According to Plaintiff, the alleged retaliation "intensified" following his testimony. (Id. ¶ 29.) Plaintiff alleges that, from March 2010 through December 2014, he was "placed on performance monitoring, . . . suspended with pay, and . . . placed on dismissal probation for one year from December 2013 to December 2014." (Id. ¶ 21.) He further alleges that, "[f]rom October 2014 [] till date, . . . [he] was further punished by being placed on dismissal probation[,] . . . on mental watch" and "on performance monitoring," and "assigned to less desirable jobs than his white counterparts, with similar age and" experience. (Id. ¶¶ 22-23, 25.) Since October 2014, he has also "been reprimanded and sanctioned[] in a more severe manner than his white counterparts, for failing to meet monthly summons and arrests quotas." (Id. ¶ 26.) He alleges that this "discriminatory" conduct is "ongoing." (Id. ¶ 27.)

Plaintiff also alleges that he has been "subjected to a hostile working environment as a result as a result of his race and national origin" beginning in October 2014, and he describes two specific incidents: (1) the "vandalization" of his locker by covering it with photographs of the leader of The New York City Patrolmen's Benevolent Association (the "PBA"), the union representing NYPD police officers, and (2) an incident on January 23, 2015, when he was allegedly "accosted" at the 94th Precinct by a police officer who called him a "fucking bitch," a race-neutral vulgarity. (Id. ¶ 24.) Plaintiff alleges that the IAB has not responded to his complaints about this treatment and his belief that his safety is under threat, and that his requests for a transfer out of the precinct have gone unaddressed. (Id.)

## Discussion

Defendants move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss this action for failure to state a claim upon which relief may be granted. When

considering a Rule 12(b)(6) motion, the Court accepts as true all non-conclusory factual allegations in the complaint and draws all reasonable inferences in the Plaintiff's favor. Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007). To survive such a motion, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court is not, however, required to accept "conclusory statements" made by the Plaintiff as true, nor do "legal conclusion[s] couched as [] factual allegation[s]" merit such deference. Twombly, 550 U.S. at 555.

*Plaintiff's Claims Against the NYPD*

As an agency of the City of New York, the NYPD is a non-suable entity. See N.Y.C. Charter § 396 (2014) ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency . . . ."); Jenkins v. City of New York, 478 F.3d 76, 93 n.19 (2d Cir. 2007) (noting that no claim may be brought directly against NYPD). Therefore, Plaintiff cannot properly assert any claims directly against the NYPD. Defendants' motion is thus granted in its entirety with respect to the NYPD, and all claims asserted against the NYPD are dismissed, without prejudice to litigation against the City of the substance of the claims.

*Timeliness of Plaintiff's Claims*

Defendants argue that many of Plaintiff's Title VII and First Amendment retaliation allegations are time-barred by the applicable statute of limitations and thus must be dismissed; specifically, that all Title VII claims that accrued prior to July 3, 2014, are time-

barred and that any free speech claims that accrued prior to September 1, 2012, are time-barred. (Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Complaint ("Def. Opening Br."), Docket Entry No. 15, at 5-6, 8-9.) Plaintiff argues that his Title VII allegations that accrued prior to July 3, 2014, and free speech claims that accrued prior to September 1, 2012, are not time-barred because they occurred as part of continuing violations that occurred within the applicable statute of limitations periods. (Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint, ("Pl. Br."), Docket Entry No. 17, at 9-10, 12-13.) Plaintiff's arguments are unavailing.

Timeliness of Plaintiff's Title VII Claims

Title VII requires that claims of discrimination be filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged discriminatory act. McGullam v. Cedar Graphics, Inc., 609 F.3d 70, 75 (2d Cir. 2010); 42 U.S.C. § 2000e–5(e)(1). Plaintiff undisputedly filed his EEOC charge on April 29, 2015. Accordingly, Defendants argue that any of his Title VII claims that accrued prior to July 3, 2014, are time-barred.

Plaintiff's claims based on discrete acts of alleged discrimination occurring more than 300 days prior to this date are time-barred unless Plaintiff can demonstrate that the acts were part of a continuing violation. Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618, 628-32 (2007). Actions such as failures to promote and discriminatory pay decisions are considered discrete for this purpose. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 111, 114 (2002) ("42 U.S.C. § 2000e-2 explains in great detail the sorts of actions that qualify as

'unlawful employment practices' and includes among such practices numerous discrete acts"); Ledbetter, 550 U.S. at 628.

The adverse employment actions of which Plaintiff complains – suspension without pay, suspension with pay, punitive postings, restricted duty psychological hold, no vacation for four years, no overtime for four years, no night differential pay for four years, no training for four years, placement on performance monitoring, placement on dismissal probation, and less desirable job assignments[1] – constitute such discrete acts for purposes of the statutory anti-discrimination provisions. Thus, even when the allegations of his complaint are taken as true and the facts alleged are viewed in the light most favorable to Plaintiff, his Title VII statutory claims are clearly untimely to the extent they are premised on discrete events occurring before July 3, 2014. See Morgan, 536 U.S. at 114; Elmenayer v. ABF Freight System, Inc., 318 F.3d 130, 134-35 (2d Cir. 2003). Accordingly, Plaintiff's Title VII claims based on such events are dismissed as untimely.

Timeliness of Plaintiff's First Amendment Claims

Plaintiff's continuing violation argument with respect to his First Amendment retaliation claim is similarly unavailing. There is a three-year statute of limitations for First Amendment claims under 42 U.S.C. § 1983. See Smith v. Campbell, 782 F.3d 93, 99-100 (2d Cir. 2015). "For the continuing violation doctrine to apply [to First Amendment Claims], each of the allegedly retaliatory events must constitute an 'ongoing policy of retaliation.'" Hadid v. City of New York, No. 15-CV-19-WFK-RER, 2015 WL 7734098, at *8 (E.D.N.Y. Nov. 30, 2015) (citing Smith v. N.Y.C. Dep't of Educ., 524 F. App'x 730, 732 (2d Cir. 2013)), aff'd, No. 16-

---

[1] (See Compl. ¶¶ 16-18, 22-23, 25.)

4226-CV, 2018 WL 1836093 (2d Cir. Apr. 18, 2018) (Summary Order). As with the foregoing Title VII analysis, "the continuing violation doctrine does not apply to discrete acts of discrimination, such as 'termination, failure to promote, denial of transfer, or refusal to hire.'" Id. (quoting Morgan, 536 U.S. at 114). "[T]he continuing violation doctrine 'applies not to discrete unlawful acts, even where those discrete acts are part of a 'serial violation,' but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment.'" Hadid v. City of New York, No. 16-4226-CV, 2018 WL 1836093, at *3 (2d Cir. Apr. 18, 2018) (quoting Gonzalez v. Hasty, 802 F.3d 212, 220 (2d Cir. 2015)). Generally, courts within this Circuit will only "invoke the continuing violation doctrine" upon a showing of compelling circumstances, or "limited to situations where there are specific policies or mechanisms, such as discriminatory seniority lists or employment tests." Hadid, 2015 WL 7734098, at *8 (quotation marks and citations omitted).

Here, Plaintiff does not allege facts framing an ongoing policy of retaliation or "claims that by their nature accrue only after . . . [P]laintiff ha[d] been subjected to some threshold amount of mistreatment." See Hadid, 2018 WL 1836093, at *3. There are no facts alleged in the Complaint to suggest the NYPD had specific policies or mechanisms in place that could constitute an ongoing policy of retaliation for his alleged speech about the NYPD's use of quotas and alleged discrimination and corruption within Plaintiff's precinct and the NYPD at large. Instead, each of the allegedly retaliatory events was a discrete action, such as those addressed above in the Title VII timeliness discussion. Accordingly, the continuing violation doctrine does not apply here, and Plaintiff's First Amendment claims accruing before September 1, 2012, are deemed untimely.

*Race Discrimination, Hostile Work Environment, and Retaliation Claims Under Title VII (First and Fourth Causes of Action)*

In his First and Fourth Causes of Action, Plaintiff alleges that the Defendants discriminated against Plaintiff on the basis of his race, maintained a hostile work environment, and retaliated against him for complaining about the racially discriminatory and illegal quota practices of the NYPD, in violation of Title VII.[1]  (Compl. ¶¶ 31-32, 37-38.)  Defendants assert that Plaintiff has failed to state a claim upon which relief may be granted.  (Def. Opening Br. at 8-12.)

Race Discrimination Claim

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C.S. § 2000e-2(a)(1) (LexisNexis 2012).  Plaintiff asserts a Title VII claim of discrimination on the basis of race.  (Compl. ¶¶ 31-32).

To survive a motion to dismiss a claim of discrimination, a plaintiff must plausibly allege facts demonstrating that:  (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) he has minimal factual support for the proposition that the employer was motivated by discriminatory intent. Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015).  An "adverse employment action" is a "materially adverse change in the terms and conditions of employment[,]" and "[t]o be materially adverse, a change in working conditions must be more disruptive than a mere

---

[1] In light of the Court's determination above regarding the timeliness of Plaintiff's claims, the Court will only address the sufficiency of Plaintiff's Title VII claims that accrued on or after July 3, 2014.

inconvenience or an alteration of job responsibilities." Sanders v. N.Y. City Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004) (internal quotation marks and citation omitted). "Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Id. (internal quotation marks, ellipses, and citation omitted). "Although 'an employment discrimination plaintiff need not plead a prima facie case of discrimination' in order to survive a motion to dismiss," a plaintiff "must allege sufficient facts showing that [he] is entitled to relief." Bermudez v. City of New York, 783 F. Supp. 2d 560, 575 (S.D.N.Y. 2011) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002)).

Plaintiff's only allegations of discrimination on the basis of race, as opposed to actions allegedly taken in retaliation for his stated opposition to the NYPD's allegedly racially discriminatory quota practices, are that from October 2014 to date, he "has been assigned to less desirable jobs than his white counterparts, with similar age and time on the police force," and that he "has been reprimanded and sanctioned, in a more severe manner than his white counterparts, for failing to meet monthly summons and arrests quotas." (Compl. ¶¶ 25-26.) Plaintiff further alleges that "[t]he discriminatory actions of the Defendants are ongoing and continue to this day." (Id. ¶ 27.)

These allegations are insufficient to support an inference of discrimination on the basis of race, as Plaintiff fails to identify an "adverse employment action" or otherwise demonstrate that the alleged assignments to less desirable jobs or sanctions for failing to meet required quotas, were "more disruptive than an alteration of job responsibilities." See Sanders, 361 F.3d at 755. Moreover, Plaintiff fails to support his bare-bones, conclusory statements that

he was treated differently than his similarly situated white counterparts with any allegations that allow the Court to infer that such treatment was "on the basis of race," such as exemplars of particular instances and facts showing that white comparators were similarly situated in pertinent respects. See Littlejohn, 795 F.3d at 311; Bermudez, 783 F. Supp. 2d at 575. Polanco's mere "labels and conclusions" are insufficient to survive a motion to dismiss.

Hostile Work Environment Claim

Plaintiff alleges that he has been subjected to a hostile work environment on the basis of his race and national origin since October 2014, and alleges facts concerning two instances in furtherance of this claim: he claims that his "locker was vandalized by being pasted over with photographs of" the leader of the PBA, and that, on January 23, 2015, he was "accosted" at the 94th Precinct by a police officer who called him a "fucking bitch." (Compl. ¶ 24.) He also alleges that "his safety is under threat." Id. The Court construes the claim as one brought pursuant to Title VII. Defendants argue that Plaintiff has not alleged facts demonstrating plausibly that the conduct was so severe or pervasive so as to alter the conditions of his employment or that the conduct occurred because of his race. (Def. Opening Br. at 9-11.)

"To establish a hostile work environment under Title VII, . . . a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[,] and "[t]he incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Littlejohn, 795 F.3d at 320-21 (quotation marks and citations omitted). To "determin[e] whether a plaintiff suffered a hostile work environment," a court "consider[s] the totality of the circumstances,

including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 321 (quotation marks and citation omitted)."

Plaintiff's bare-bones and conclusory allegations – that his locker was defaced with pictures of a union leader, that he was addressed with an epithet that did not include any racial reference, and that his "safety is under threat" – are insufficient to support an inference that his "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." See Littlejohn, 795 F.3d at 320-21. Plaintiff has not alleged incidents that are "sufficiently continuous and concerted" nor "pervasive." See id. Moreover, Plaintiff does not allege facts sufficient to support an inference that this conduct was motivated by Polanco's race or national origin. Accordingly, Plaintiff has failed to state a hostile work environment claim under Title VII.

Retaliation Claim (Fourth Cause of Action)

Title VII also prohibits discrimination by an employer against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C.S. § 2000e-3(a) (LexisNexis 2005). "[F]or a retaliation claim to survive a . . . motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated or took an adverse employment action against him, (2) 'because' he has opposed any unlawful employment practice." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90 (2d Cir. 2015) (quoting 42 U.S.C. § 2000e-3(a)). The "adverse

employment action" standard in the context of a Title VII retaliation claim "covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII" and "is not limited to discriminatory actions that affect the terms and conditions of employment." Id.  However, "a plaintiff must plausibly plead a connection between the act and his engagement in protected activity[,]" and "[a] retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action." Id. (citations omitted).  "[T]he Second Circuit has held that an adverse action that occurs within two months or less of a protected activity . . . is sufficient to survive a motion to dismiss on the issue of causation." Day v. City of New York, 2015 WL 10530081, at *13 (S.D.N.Y. Nov. 30, 2015) (citing Vega, 801 F.3d at 92).  "[F]or an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." Vega, 801 F.3d at 90 (citing Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013)).

In the Complaint, Plaintiff only alleges that he expressed opposition to an employment practice of the NYPD on one occasion:  a complaint made to the IAB at an unspecified time, presumably after October 2014, about the locker vandalization, being called by the vulgar, non-racial epithet, and the perceived threat to his safety.[2]  (Compl. ¶ 24.)  He also alleges that since October 2014, he "has been assigned to less desirable jobs" and "reprimanded and sanctioned, in a more severe manner," than his similarly situated white colleagues, though he

---

[2] All other instances of alleged opposition to the NYPD's practices in the Complaint appear to be based on Plaintiff's "opposition to the unfair racially discriminatory and illegal mandatory enforcement activity <u>which targets the minority African-American and Latino [c]ommunity to which Officer Polanco belongs</u>." (See Compl. ¶ 12 (emphasis added).)  Plaintiff has not, in claiming bias against a community, identified "unlawful employment practices" that are subject to a Title VII retaliation analysis.

does not allege when that conduct occurred in relation to his IAB complaint. (Id. ¶¶ 25-26.) Plaintiff makes generalized statements that he was "heavily punished" in various ways over four years, (see id. ¶ 16), but does not allege a connection between those punishments and his alleged engagement in protected activity, or his IAB complaint about an allegedly hostile work environment. These bare-bones and conclusory allegations do not provide facts sufficient to support plausibly an inference that Defendants "discriminated or took an adverse employment action against him . . . 'because' he has opposed any unlawful employment practice," or that any actions taken against him occurred "because" of his filing of a complaint with the IAB about his workplace conditions. See Vega, 801 F.3d at 90. Plaintiff has thus failed to allege plausibly a Title VII retaliation claim.

For the foregoing reasons, Defendants' motion is granted as to the First and Fourth Causes of Action.

*First Amendment Retaliation Claim (Seventh Cause of Action)*

In his Seventh Cause of Action, Plaintiff alleges that the Defendants retaliated against him for lodging internal and external complaints regarding the NYPD's quota system and have violated his rights under the First Amendment to the United States Constitution and 42 U.S.C. § 1983.[3] (Compl. ¶¶ 43-44.) "Where, as here," a plaintiff claims that he was "retaliated against in violation of the First Amendment, he [] must plausibly allege that '(1) his [] speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him []; and (3) there was a causal connection between this adverse action and the protected

---

[3] In light of the Court's determination above regarding the timeliness of Plaintiff's claims, the Court will only address the sufficiency of Plaintiff's First Amendment claims that accrued on or after September 1, 2012.

speech.'" Montero v. City of Yonkers, N.Y., 890 F.3d 386, 394 (2d Cir. 2018) (quoting Cox v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267, 272 (2d Cir. 2011)).  Defendants assert that Plaintiff's claims are partially time-barred, assume without conceding the proposition that Plaintiff plausibly alleges the first two elements of his First Amendment retaliation claim, and argue that he fails to allege facts that support the requisite causation element.  (Def. Opening Br. at 5-7.)

To satisfy the "causal connection" prong, the allegation "must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action, that is to say, the adverse employment action would not have been taken absent the employee's protected speech."  Stajic v. City of N.Y., 214 F. Supp. 3d 230, 235 (S.DN.Y. 2016) (citations and internal quotation marks omitted).  "'Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus.'"  Id. (quoting Mandell v. Cty. Of Suffolk, 316 F.3d 368, 383 (2d Cir. 2003)).  A plaintiff may sufficiently plead "a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action, . . . and generally, temporal proximity is strong circumstantial evidence of improper intent."  Id. (quotation marks, citations, and brackets omitted).  "When a party relies on 'the mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action, courts uniformly hold that the temporal proximity must be very close.'"  Payson v. Bd. of Educ. of Mount Pleasant Cottage Sch., USFD, No. 14-cv-09696-JCM, 2017 WL 4221455, at *13 (S.D.N.Y. Sept. 20, 2017) (quoting Adams v. Ellis, No. 09-cv-01329-PKC, 2012 WL 693568, at *16 (S.D.N.Y. Mar. 2, 2012)) (internal quotation marks and citations omitted).  "[T]here is no hard and fast rule for the

amount of time that must pass before a causal connection is necessarily broken[] . . . but two years is far longer than" the periods held relevant in many cases, and "[i]ndeed, it is the rare case that finds a plausible claim when nearly a year rather than months have gone by." Birch v. City of N.Y., 184 F. Supp. 3d 21, 32 (E.D.N.Y. 2016). "[A] plaintiff may not rely on conclusory assertions of retaliatory motive to satisfy the causal link." Cobb v. Pozzi, 363 F.3d 89, 108 (2d Cir. 2003).

Defendants and Plaintiff appear to agree that the only instance of alleged "protected activity" that occurred after September 1, 2012, was Polanco's testimony at a trial concerning allegedly unconstitutional stop-and-frisk practices in March 2013. (See Def. Opening Br. at 7; Pl. Br. at 11-12.) Plaintiff has not pled direct evidence of retaliatory animus, or that he was told that certain adverse actions were being taken against him because of his protected activity, and thus the Court must consider whether he has alleged facts that would constitute indirect evidence of a "causal connection." See Stajic, 214 F. Supp. 3d at 235.

Other than generalized allegations that Plaintiff was "heavily punished" for various reasons over four years, beginning in December 2009 (see Compl. ¶ 16), the earliest alleged adverse employment action that is not time-barred occurred from December 2013 to December 2014, when Polanco was placed on dismissal probation for one year (id. ¶ 21). The passage of "nearly a year," or nine months, between Plaintiff's trial testimony and his December 2013 placement on dismissal probation is insufficient to support an inference of a "causal connection that suggests retaliation." See Birch, 184 F. Supp. 3d at 32. For similar reasons, Plaintiff's allegation of conduct that occurred "from October 2014 [to] date" is not sufficiently proximate in time to his March 2013 trial testimony, and thus is insufficient to support an inference of a "causal connection that suggests retaliation." See id. Plaintiff has thus failed to

plead facts to support an inference that Defendants violated his rights under the First Amendment.

Accordingly, Defendants' motion is granted as to the Seventh Cause of Action.

*New York State Constitution Article 1, § 8 Free Speech Retaliation Claim (Eighth Cause of Action)*

Plaintiff asserts that, in retaliating against Plaintiff for complaining about the alleged quotas and discriminatory discipline, Defendants also violated Article 1, § 8 of the New York State Constitution. (Compl. ¶¶ 45-46.) Defendants assert that these claims should be dismissed because they mirror the First Amendment claims that Plaintiff brought under Section 1983. (Def. Opening Br. at 8.) Defendants' point is well taken.

"[I]t is a common view among District Courts in this Circuit that there is no right of action under the New York State Constitution for claims that can be brought under § 1983." Dava v. City of New York, 2016 U.S. Dist. LEXIS 115639, at *30-31 (S.D.N.Y. Aug. 29, 2016) (quotation marks and ellipses omitted) (citing Gounden v. City of New York, 14-cv-07411-BMC, 2015 WL 5793625, at *5 n. 3 (E.D.N.Y. Oct. 2, 2015); Flores v. City of Mount Vernon, 41 F. Supp. 2d 439 (S.D.N.Y.1999); and Sherman v. Town of Chester, 2015 WL 1473430, at *14 (S.D.N.Y. Mar. 31, 2015)). "'New York courts will only imply a private right of action under the state constitution where no alternative remedy is available to the plaintiff.'" Davis v. City of New York, 959 F. Supp. 2d 324, 368 (S.D.N.Y. 2013) (quoting Felmine v. City of New York, 09-cv-03768-CBA-JO, 2012 WL 1999863, at *6 (E.D.N.Y. June 4, 2012)).

Because Plaintiff is asserting First Amendment retaliation claims pursuant to Section 1983, his state constitutional claim is superfluous and will be dismissed.

*Supplemental Jurisdiction of State and Local Discrimination and Retaliation Claims (Second, Third, Fifth, and Sixth Causes of Action)*

Because Plaintiff has failed to state viable federal discrimination, retaliation, and First Amendment claims, the Court declines to exercise supplemental jurisdiction of Plaintiff's NYSHRL and NYCHRL claims (the Second, Third, Fifth, and Sixth Causes of Action), pursuant to 28 U.S.C. § 1367(c).

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Complaint is granted. The scheduled July 10, 2018, initial pre-trial conference is adjourned to **Friday, October 26, 2018, at 10:00 a.m.** as a control date.

Plaintiff may make a motion for leave to replead the claims and requests for relief asserted in his First through Seventh Causes of Action. Any such motion must be filed by **Thursday, July 19, 2018,** and must be accompanied by a proposed Amended Complaint, a blacklined version reflecting changes from the Complaint, and a memorandum of law in support of the motion. Failure to make such a timely motion, or denial of the motion as futile, may result in dismissal with prejudice of the Amended Complaint in its entirety, without further advance notice.

This Memorandum Opinion and Order resolves Docket Entry No. 13.

SO ORDERED.

Dated: New York, New York
      June 27, 2018

    /s/ Laura Taylor Swain
    LAURA TAYLOR SWAIN
    United States District Judge